**FILED**

**November 4, 2016**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:40 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **BARBARA BOOZE,** | ) | **Docket No.: 2016-08-0678** |
| **Employee,** | ) | |
| **v.** | ) | |
| **MEMPHIS AREA TRANSIT** | ) | **State File Number: 85811-2015** |
| **AUTHORITY** | ) | |
| **Employer,** | ) | |
| **And** | ) | |
| **PMA COMPANIES,** | ) | **Judge Amber E. Luttrell** |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER DENYING TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on October 12, 2016, upon the Request for Expedited Hearing filed by Barbara Booze, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case concerns Ms. Booze's entitlement to temporary disability benefits. The central legal issue is whether Ms. Booze is likely to establish at a hearing on the merits that she was entitled to temporary disability benefits between May 3 and September 8, 2016, when she reached maximum medical improvement (MMI). For the reasons set forth below, the Court holds Ms. Booze did not come forward with sufficient medical proof, at this time, to establish entitlement to temporary disability benefits for the requested period.[1]

### History of Claim

The following facts were established at the Expedited Hearing. Ms. Booze is a sixty-year-old resident of Shelby County, Tennessee. She worked as a bus driver for Memphis Area Transit Authority (MATA) for approximately fifteen years. She suffered an unfortunate work-related mental injury on September 2, 2015, when she witnessed a

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

passenger shoot another passenger on the bus she was operating. Ms. Booze alleged post-traumatic stress disorder following the incident and received authorized psychological and psychiatric treatment for the condition. The parties agreed MATA paid Ms. Booze temporary total disability benefits from September 2, 2015, through May 3, 2016, at the rate of $588.07 per week.

The limited medical records admitted into evidence indicated Ms. Booze underwent psychotherapy sessions for a lengthy period with Megan Avery Ph.D., a psychologist, for symptoms of sadness and anxiety associated with her condition.[2] The records began with Dr. Avery's note of April 1, 2016, which was Ms. Booze's twelfth therapy session. (Ex. 5.)[3] On that date, Dr. Avery noted Ms. Booze struggled to complete her exposure homework and was only able to go to the parking lot once.[4] Dr. Avery noted,

> We discussed if she is capable and/or willing to complete the necessary exercises to RTW.[5] She wants to complete them, but finds it impossible. She elected to no longer pursue RTW. She wants to focus on moving forward with a different path and to resolve her symptoms without focusing on RTW. She still has symptoms that resulted from the work-related incident, which require therapy; therefore, treatment continues.

*Id.*

On April 7, Dr. Avery noted Ms. Booze's improved mood, which Ms. Booze attributed to "lifting the burden of attempting to cope with returning to MATA." *Id.* In her note, Dr. Avery responded to questions concerning Ms. Booze's ability to work.[6] Dr. Avery was asked, "Do you think that Ms. Booze would be able to work towards returning to another type of employment?" She responded, "Yes. Ms. Booze is capable of working. She is not able/willing to work towards overcoming the traumatic stressors/triggers of returning to MATA. She is interested in working in a different field." *Id.*

---

[2] The parties also admitted three medical records into evidence from Mental Health Resources. Ms. Booze saw a physician (illegible name) on March 8, 2016, who prescribed Zoloft for her condition. (Ex. 6.) On June 21, 2016, the doctor noted "she is doing much better now that she has decided to retire." Ms. Booze returned on August 16, 2016, and reported feeling very anxious and increased panic attacks following the death of two of her colleagues.

[3] The Court notes MATA filed an Index of Proposed Exhibits and Documents prior to the Expedited Hearing, which contained certain medical records from Dr. Avery and Mental Health Resources, PLLC. At the hearing, Ms. Booze, through counsel, stipulated to admissibility of the records filed by MATA and did not seek to admit any other medical records into evidence.

[4] According to Ms. Booze, this therapy consisted of Ms. Booze attempting specific activities like sitting in the parking lot at a MATA bus station.

[5] The Court understood Dr. Avery's note of RTW to mean "return to work."

[6] Dr. Avery's record did not indicate who posed the questions to her. The Court assumed the questions were posed by an employer representative.

The next record admitted was June 9, when Dr. Avery and Ms. Booze discussed her social activities, anxiety symptoms when attempting to drive, and a gradual plan to help her progress with driving. Ms. Booze continued therapy through September 8, 2016, when she reached MMI. Dr. Avery noted, "It is my opinion that the patient is at maximum medical improvement, and that psychological treatment should be continued at some level, to attempt to prevent deterioration (monthly sessions at this point)." *Id.*

Ms. Booze testified that during her treatment, Dr. Avery wanted her to engage in exposure therapy, which consisted of Ms. Booze attempting specific activities like sitting in the parking lot at a MATA bus station. She testified that seeing buses following the work incident caused her anxiety symptoms. She also stated wearing her uniform was a trigger for her symptoms. Ms. Booze attempted to sit at bus stations, but stated it made her nauseous. She could not do it. She eventually informed Dr. Avery she was not able to do exposure therapy as advised.

Ms. Booze testified that in early 2016, Dr. Avery discussed returning her to light duty work at MATA where she was not in proximity to buses. Ms. Booze began communicating with Beth Walker, HR Generalist at MATA, about returning to work. MATA offered Ms. Booze a light duty job in the terminal building as a reservationist. The parties agreed Ms. Walker told Ms. Booze she did not have to wear her uniform to this job assignment since it troubled her. Ms. Booze did not attempt the light duty position because she stated she would have to walk past buses parked at the terminal to enter and exit the building.

MATA terminated Ms. Booze's temporary total disability benefits on May 3, 2016, contending she was unwilling to return to a position with MATA. (Ex. 9.) Subsequently, Ms. Booze began discussions with Ms. Walker concerning her options under MATA's retirement plan. Ms. Booze testified that prior to her work injury, she had not considered early retirement.

Ms. Walker testified MATA offered Ms. Booze a light duty job as a reservationist in the Mataplus department inside the terminal building. There are no windows in the building; therefore, Ms. Booze would not have been exposed to buses while performing the job. However, Ms. Booze would see buses several yards away in the parking lot while entering or exiting the building. Ms. Walker stated MATA would have accommodated Ms. Booze with the reservationist position until her MMI date of September 8, had she not declined to return to work. If Ms. Booze would have asked, Ms. Walker testified MATA would have considered any other reasonable accommodation to facilitate her return to work.

Ms. Walker further testified that Ms. Booze called her regarding retirement options in May and expressed that she did not want to return to work at MATA. However, on cross-examination, she confirmed that Ms. Booze never approached her

3

about retirement or disability through MATA prior to May 3, when Ms. Booze was notified that her temporary disability benefits were terminated.[7]

Ms. Booze filed a Petition for Benefit Determination (PBD) seeking temporary disability benefits, but the parties did not resolve the disputed issue through mediation. The Mediating Specialist filed a Dispute Certification Notice (DCN), and Ms. Booze filed a Request for Expedited Hearing.

At the Expedited Hearing, Ms. Booze asserted MATA should have continued her temporary total disability until her MMI date of September 8. She acknowledged MATA attempted to accommodate her by offering the reservationist job; however, they could not accommodate her in a way that avoided exposure to buses. Ms. Booze contended she wanted to return to work, but simply could not do it because of her injury and ongoing symptoms.

MATA countered Ms. Booze was no longer entitled to temporary total disability upon Dr. Avery opining that she was capable of working. Concerning temporary partial disability, MATA asserted that it offered Ms. Booze a reservationist position inside the building where she would not be exposed to buses, but she did not accept the position and instead elected not to return to work at MATA. It argued MATA should not be liable for additional temporary disability benefits based upon Ms. Booze's personal decision not to return to work for the company.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Ms. Booze need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

---

[7] On cross-examination of Ms. Walker, MATA's counsel objected to Ms. Booze's counsel's line of questioning concerning the content of email correspondence between Ms. Walker and Dr. Avery in May and June 2016. Mr. Taylor did not produce the emails to counsel or file them with the MOST Program or the Court. The Court heard both parties regarding admissibility of the testimony and reserved ruling. Mr. Taylor stated the emails contained opinions from Dr. Avery regarding Ms. Booze's ability to return to work, but asserted Ms. Walker's testimony concerning Dr. Avery's medical opinions was not hearsay because he was not offering the testimony for the truth of the matter asserted. The Court disagrees and holds the offered testimony of Ms. Walker regarding Dr. Avery's medical opinions is not admissible on hearsay grounds. The Court further excludes Ms. Walker's testimony of Dr. Avery's opinions expressed in said emails on grounds that Ms. Booze did not file them with the Court in violation of Rules 0800-02-21-.14(1)(a) and 0800-02-21-.16(6) (2015) of the Tennessee Compilation Rules and Regulations.

As noted, the sole issue before the Court at this juncture is whether Ms. Booze was entitled to temporary total or temporary partial disability benefits between May 3 and September 8, 2016, when she reached MMI.

To receive temporary total disability benefits, an employee must prove: (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *James v. Landair Transp., Inc.*, No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015). Here, the Court finds the only medical record admitted into evidence addressing Ms. Booze's ability to work is Dr. Avery's April 7 record. On that visit, Dr. Avery opined Ms. Booze was capable of working. There is no medical proof before the Court of Dr. Avery subsequently taking Ms. Booze off work. Accordingly, Ms. Booze is unlikely to prevail at a hearing on the merits in establishing entitlement to temporary total disability for the requested dates.

The Court now turns to the issue of whether Ms. Booze is entitled to temporary partial disability benefits. Temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, are available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* (citing *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions; or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

Here, Ms. Booze testified she discussed with Dr. Avery returning to work on light duty, including her anxiety caused by exposure to buses. Ms. Booze further testified she could not perform a job offered to her in the terminal building because she would still be exposed to buses while going to and from work. However, there is no medical evidence before the Court of any light duty restrictions imposed by Dr. Avery to support a claim for temporary partial disability benefits. In the absence of such proof, the Court cannot find, at this time, that Ms. Booze is likely to establish entitlement to temporary partial disability benefits at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Booze's claim against Memphis Area Transit Authority and its workers'

5

compensation carrier for the requested temporary disability benefits is denied at this time.

2. **This matter is set for an Initial (Scheduling) Hearing on December 19, 2016, at 10:00 a.m. Central Time.**

3.

**ENTERED this the 4th day of November, 2016.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Amber Luttrell, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5039 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

6

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Barbara Booze
2. First Report of Work Injury
3. Wage Statement
4. Bus Operator Job Description
5. Dr. Avery's medical records
6. Mental Health Resources medical records
7. Reservationist Job Description
8. Email from Dr. Avery dated May 6 concerning retirement
9. May 3, 2016 letter terminating TTD benefits


Technical record:[8]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Expedited Hearing

---

[8] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of November, 2016.

| Name | Via Email | Service sent to: |
|---|---|---|
| Chris Taylor, Esq., Attorney for Employee | X | ctaylor@taylortoon.com sreynolds@taylortoon.com |
| Hope Calabro, Esq. Alex Elder, Esq., Attorneys for Employer | X | hope@holleyelder.com alex@holleyelder.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**